UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| FEDERAL BEEF PROCESSORS, INC. and PHILLIP L. KUNKEL, ESQ., as Trustee for the GFI America, Inc. Bankruptcy Estate, | ) ) ) ) ) | CIV.  04-5005-KES |
| Plaintiffs, | ) ) | ORDER GRANTING IN PART AND DENYING IN PART |
| vs. | ) ) ) | DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT |
| ROYAL INDEMNITY COMPANY, a Delaware stock company; and GAB ROBINS NORTH AMERICA, INC., | ) ) ) ) | |
| Defendants. | ) | |

Defendants[1] each move for partial summary judgment with regards to

plaintiffs' allegations relating to bad faith.  Plaintiffs oppose the motions.  For

the reasons discussed below, defendants' motions for partial summary

judgment are granted in part and denied in part.

**FACTUAL BACKGROUND**

On January 30, 2002, a fire damaged the building owned by Federal

Beef located in Rapid City, South Dakota.  The loss was large and complex

because the Federal Beef building contained many components.  James

Stoops was the adjuster on behalf of GAB and handled the Federal Beef loss

---

[1] Royal Indemnity Company moved for partial summary judgment and GAB Robins North America, Inc. joined in the motion.  Dockets 283, 292.  GAB did not make its own independent argument.

for the insurance companies.  PSMF,[2] Docket 327, at ¶ 1-3.  Federal Beef hired a public adjuster, the Alex Sill Company (Sill Company), to help with the adjustment of the loss.  Id. at ¶ 13.

One day after the fire, on January 31, 2002, Stoops traveled to the site of the loss for a two-day visit.  Thereafter, Stoops assembled a team of consultants to aid in the adjustment of the claim.  Pertinent to this motion, Stoops retained Mike Lysne, a Certified Public Accountant, to assist in preparing the loss of income calculations, reviewing the inventory claims, and determining the ages of equipment.  Stoops also retained Madsen, Kneppers & Associates (MKA), a construction and engineering firm, to assist in determining the building damages and the contents/equipment damages.  Id. at ¶¶ 4, 9.  MKA subcontracted with Industrial Loss Consulting (ILC) to assist it with various portions of the adjustment process.  Id. at ¶ 55.

Approximately one month later, on March 7, 2002, Lysne provided his preliminary business interruption report to Stoops.  Lysne based his analysis on the past financial experience of Federal Beef's business.  The parties dispute whether Lysne took into account the cyclical swing of the beef industry when preparing his report.  Id. at ¶¶ 46, 47, 50.  On March 8, 2002, MKA submitted a preliminary fire damage report.  In this report, MKA

---

[2] PSMF is an abbreviation for Plaintiff's Statement of Opposing Material Facts, Docket 327.

reported a period of eighteen and a half months for reconstructing the building. ILC submitted its report with relation to the contents/equipment losses on June 28, 2002, but Federal Beef maintains it did not receive this report until August 2002. Id. at ¶¶ 43, 45, 55. Numerous revised reports were subsequently submitted by Lysne, MKA, and ILC to Stoops and Federal Beef. Id. at ¶¶ 51-53; 55-60.

On March 19, 2002, Stoops reported the preliminary results of the consultants, MKA and Lysne, to Federal Beef and indicated that he was seeking partial payment in the amount of $8,008,795. The partial payment was based on the initial reports for the building ($4,254,417), contents/equipment ($2,154,378), inventory ($1,000,000), and business interruption ($600,000). Id. at ¶¶ 61-62. Federal Beef received this payment, but the parties dispute as to when Federal Beef received this payment. In late August 2002, an additional payment of $2,212,141.85 was sought by Stoops, and the payment was made to Federal Beef. The additional payment was based upon revised reports for the building ($614,891), contents/equipment ($467,117.85), inventory ($1,000,000), and business interruption ($130,133). Id. at ¶¶ 65, 67-69. As of August 2002, the policy inventory limits of $2,000,000 had been paid to Federal Beef. Id. at ¶ 80.

On or about January 27, 2003, Federal Beef received an additional $72,740 for the building claim.  In February 2003, the additional amount of $823,435.67 was sought for the building ($20,140), contents/equipment ($798,295.67), and inventory appraisal ($5,000), and it was paid to Federal Beef in March 2003.  On October 13, 2003, an additional payment of $390,404.34 for contents/equipment, primarily involving the refrigeration equipment and conveyors was requested and Federal Beef received the payment in November 2003.  Id. at ¶¶ 71, 74, 76, 78.  The record before the court indicates that no further payments were made to Federal Beef.

## STANDARD OF REVIEW

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  Summary judgment is not appropriate if a dispute about a material fact is genuine, that is, if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party.  Id.

The moving party bears the burden of bringing forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  The nonmoving party is entitled to the benefit of all reasonable inferences to be drawn from the underlying facts in the record.  Vette Co. v. Aetna Cas. & Sur. Co., 612 F.2d 1076, 1077 (8th Cir. 1980).  The nonmoving party may not, however, merely rest upon allegations or denials in its pleadings, but must set forth specific facts by affidavits or otherwise showing that a genuine issue exists.  Forrest v. Kraft Foods, Inc., 285 F.3d 688, 691 (8th Cir. 2002).

**DISCUSSION**

In plaintiffs' amended complaint, they alleged that the insurance companies engaged in bad faith because they breached their duty of good faith and fair dealing.  Further, plaintiffs alleged that defendants vexatiously and without reasonable cause refused and failed to pay the full amount of plaintiffs' insured loss and breached the fiduciary duty they owed to plaintiffs.  Docket 24.

## I.    Bad Faith

"A cause of action against an insurance company for bad faith failure to pay a claim is recognized in South Dakota." Stene v. State Farm Mut. Auto. Ins. Co., 583 N.W.2d 399, 403 (S.D. 1998).  Additionally, "[a]n insurer's violation of its duty of good faith and fair dealing constitutes a tort, even though it is also a breach of contract." Id.  The South Dakota Supreme Court has enunciated a two-prong test that must be satisfied in order to prevail on a bad faith cause of action against an insurer.  "[F]or proof of bad faith, there must be an absence of a reasonable basis for denial of policy benefits [or failure to comply with a duty under the insurance contract] *and* the knowledge or reckless disregard [of the lack] of a reasonable basis for denial." Julson v. Federated Mut. Ins. Co., 562 N.W.2d 117, 119 (S.D. 1997). "Integral to the inquiry of whether there was (1) an absence of a reasonable basis for denial and (2) knowledge or a reckless disregard of the lack of a basis for denial, is 'whether a claim was properly investigated and whether the results of the investigation were subjected to a reasonable evaluation and review.' " Hammonds v. Hartford Fire Ins. Co., 501 F.3d 991, 996 (8th Cir. 2007) (applying South Dakota law).

The South Dakota Supreme Court has further explained that "the knowledge of the lack of a reasonable basis may be inferred and imputed to

6

an insurance company where there is a reckless disregard of a lack of a reasonable basis for denial or a reckless indifference to facts or to proofs submitted by the insured." Stene, 583 N.W.2d at 403 (quotations and citation omitted).  Notwithstanding this test, an insurance company may "challenge claims which are fairly debatable and will be found liable only where it has intentionally denied (or failed to process or pay) a claim without a reasonable basis." Id.

**A.      Absence of a Reasonable Basis for Denial of Policy Benefits**

**1.   Denial of Policy Benefits**

The evidence demonstrates that a reasonable jury could find that Royal denied plaintiffs' policy benefits.  As to the building claim, plaintiffs received $4,962,118 of the $5 million policy limit.  Plaintiffs received $4,254,417 in March 2002, $614,891 in August 2002, $72,740 in January 2003, and $20,140 in March 2003.  With regard to the contents/equipment claim, plaintiffs received $3,819,195.87 of the available $6.4 million policy limit.  Plaintiffs received $2,154,378 in March 2002, $467,117.85 in August 2002, $798,295.67 in March 2003, and $390,404.35 in November 2003.  With respect to the inventory claim, plaintiffs received the $2 million policy limit, one payment of $1 million in March 2002, and another payment of $1,000,000 in August 2002.  As to the business interruption claim, plaintiffs received $730,133 of the available $10 million policy limit.  Plaintiffs received

$600,000 in March 2002 and $130,133 in August 2002.  With the exception of the inventory claim, there is evidence from which a jury could find that policy benefits have been denied.

### 2.   Absence of a Reasonable Basis for Denial of Policy Benefits

Plaintiffs argue that there was an absence of a reasonable basis for denial of policy benefits.  Plaintiffs emphasize that there were errors and delays in the insurance adjustment process.  Further, plaintiffs argue that Royal failed to replace or assist Stoops or become significantly involved in the adjustment after numerous problems occurred during the adjustment.  Royal disputes that any errors or problems occurred during the adjustment process.

### a.   Missed Rooms and Refrigeration Equipment

Plaintiffs argue that the experts hired by Stoops missed rooms and refrigeration equipment when performing their assessment and that Stoops did not request payment for those amounts until his seventh report dated February 18, 2003, more than one year after the fire.  Plaintiffs further argue that MKA failed to provide any loss report regarding the refrigeration equipment until eighteen months after the fire.  Royal responds that when the missed rooms were brought to the attention of defendants' adjusters, the adjusters determined an additional amount was due and made subsequent payments.  Royals argues that likewise when the adjusters became aware of

8

the missed refrigeration equipment, an adjustment was made and policy benefits were paid.

Here, the insurance company's adjusters did fail to include particular rooms and equipment in their initial report.  But during a September 2002 meeting, the rooms that had been omitted from the initial report were discussed, and defendants' adjusters visited the site again to confirm that they had missed some rooms and equipment in their assessment.  Docket 328-4 at 3-4.  Upon realizing that it has missed rooms, MKA prepared a subsequent report regarding the omitted rooms and gave it to Stoops.  Stoops requested payments for those amounts and plaintiffs were paid.  Docket 328-5.  Under the unique facts of this case, the court finds that at the time defendants denied benefits, they had a reasonable basis for doing so.  Defendants' determination of whether to pay benefits was based upon a mistake that particular rooms and refrigeration equipment did not exist.  When defendants became aware of the omissions, the additional amount due was determined and the policy benefits were paid.  Accordingly, plaintiffs' bad faith cause of action cannot rest upon the fact that defendants' adjusters initially missed rooms and refrigeration equipment when completing its assessment and, therefore, partial summary judgment is granted in relation to those allegations.

### b.    Cleaning Equipment

Plaintiffs argue that MKA failed to engage cleaning experts and attempted to have the first cleaning report based solely upon photographs. Royal points out that although it believed that the equipment could be cleaned, it allowed for extra cost to recondition the equipment.

Plaintiffs have submitted evidence that GAB's estimate for cleaning equipment was done based upon photographs and not on a visual inspection by GAB or any of its experts.  Plaintiffs' retained insurance expert, Clinton E. Miller, opined that an expert should not estimate the cost of cleaning equipment by viewing photographs and that he is not aware of any experts who utilize this method when assessing the cost of cleaning equipment. Further, Miller opined that GAB engaged in a "shortcut" in adjusting plaintiffs' insurance claim and that, therefore, GAB had a conscious disregard of plaintiffs' right under the subject insurance policy.  Docket 328-7 at 32.  Moreover, Mark Schwartz, a representative of Royal, testified that he believed that to determine a clean and repair estimate for plant damage, an individual would have to visit the facility to have an accurate estimate. Schwartz also stated that he does not recall a methodology that consists of assessing cleaning costs based upon digital photographs instead of a site visit.  Docket 328-3 at 9. Accordingly, there is sufficient evidence for a reasonable jury to determine that Royal denied contents/equipment policy

10

benefits based upon an inaccurate estimate of cleaning equipment and that, therefore, Royal denied policy benefits without a reasonable basis.

### c.    Rebuilding Time Frame

Plaintiffs argue that the insurers' expert erred when determining that any rebuilding needed to commence prior to the insurers completing or submitting any of their significant reports.  Plaintiffs also maintain that Stoops allowed Lysne to use eighteen months as the rebuilding time period when calculating the business interruption claim even though the expert at MKA had opined that it would take eighteen and a half months to rebuild the Federal Beef facility.  Royal responds that MKA determined that eighteen and a half months was a reasonable time to rebuild the Federal Beef facility. Royal emphasizes that the period of restoration is a theoretical period to rebuild and is not related to the adjustment process and exchange of information.

MKA relayed to GAB that eighteen and a half months would be a reasonable period to rebuild plaintiffs' meat processing plant, but Stoops subsequently represented to the insured that the construction rebuilding period was eighteen months.[3]  Miller, plaintiffs' expert, opined that Stoops failed to follow the advice of his own expert and unilaterally subtracted a half

---

[3] Stoops also allowed Lysne to use an eighteen-month rebuilding period when calculating the business interruption loss.

month off the plaintiffs' loss of use claim.  Docket 328-7 at 15-16.

Defendants have presented no evidence to demonstrate why Stoops reduced

the rebuilding period from eighteen and a half months to eighteen months.

As such, a jury could find that Royal denied business interruption policy

benefits without a reasonable basis because evidence exists from which a

reasonable jury could find that Stoops inexplicably and without a reasonable

basis reduced the construction rebuilding period estimate given to him by his

retained expert.

### d.    Evaluation of Business Interruption Claim

Plaintiffs argue that Royal engaged in bad faith when it failed to

supervise or guide Stoops in his adjustment of their business interruption

claim.  First, plaintiffs maintain that in March 2002, Lysne stated that he

needed an expert in the beef industry and the insurers never provided one.

Plaintiffs argue that despite the fact that they notified the insurers that

Federal Beef would have become profitable in the future, Lysne did not

engage an expert until February 7, 2003.  Plaintiffs further argue that in

October 2003 and December 2003, Stoops inaccurately reported to plaintiffs

that Dr. Unruh, a retained expert, was continuing to review the business

interruption claim.  Second, plaintiffs argue that the failure of Stoops and

Lysne to review market conditions even though the need for such a review

was brought to their attention early on in the adjustment process constitutes

bad faith.  Plaintiffs assert that they informed the adjusters that the beef industry conditions had improved, that neither Stoops nor Lysne made any effort to review the condition of the market place, that Lysne never took into account market conditions, and that Royal did not correct this failure.

Royal responds that the dispute surrounding the business interruption claim centers on the amount of money owed to plaintiffs and that it had a reasonable basis for paying what it did and for not paying the additional amounts sought by plaintiffs.  Royal asserts that plaintiffs ignored the past losses of the Federal Beef facility and only considered the future operational changes when determining business interruption estimates.  Royal also asserts that the proper measure of the business interruption claim is to use the historical financial performance of Federal Beef.  Royal argues that it and Federal Beef used different methodologies to calculate the business interruption claim and that such a difference in calculation does not constitute bad faith.  Further, Royal argues that after plaintiffs changed their business interruption estimate numerous times, Stoops retained an expert and continued to attempt to keep an expert on the case.

On March 7, 2002, Lysne provided to Stoops his preliminary business interruption report, which he based on the past financial experience of Federal Beef's business.  Docket 285-18.  From March 2002 to August 2002, Federal Beef submitted business interruption reports, which were based in

part upon the future operations.  Dockets 285-47, 285-48, 285-50.  Based upon Federal Beef's business interruption reports, Lysne wrote to Professor Marsden of Kansas State on February 3, 2003, to engage his professional services as an expert in beef slaughterhouse operations.  Docket 285-57. Stoops authorized Lysne to hire a beef expert because the past historical experience of the company and the claim presented by plaintiffs for an amount reflective of after the date of loss were significantly different.  Docket 328-2 at 30.

In relation to business interruption policy benefits, the insurance policy states that in determining the amount of net profit, charges, and expenses, "due consideration shall be given to the experience of the Insured's business before the date of damage or destruction **and** to the probable experience thereafter had no loss occurred."  Docket 328-15  at 21 (emphasis added).  As such, under the policy, both Federal Beef's past financial experience and future operations should be considered in evaluating the amount of business interruption benefits Federal Beef is entitled to receive. Thus, based upon the evidence presented, a jury could determine that there was not a reasonable basis to deny business interruption policy benefits to plaintiffs because the adjusters failed to take into account future operations when completing the business interruption assessment.  Further, a jury could find that the fact that Lysne failed to look for an industry expert on the

14

processing of beef and did not start investigating plaintiffs' business interruption claim until February 2003 also demonstrate that the insurance company lacked a reasonable basis for denying business interruption policy benefits.

### e.    Misrepresentation of Policy

Plaintiffs argue that Stoops failed to explain all of the benefits available and misinformed plaintiffs about significant portions of the policy.  For example, plaintiffs claim that Stoops incorrectly informed them about the $5,000 inventory evaluation, ninety-day extension, and the seven-day deductible. Plaintiffs argue that there were no actions taken to correct these statements, even though the insurance companies were aware or should have been aware of the plain terms of the policy and what Stoops was representing to them.  Royal responds that even if Stoops misrepresented money available for inventory evaluation, the $5,000 that plaintiffs were entitled to with respect to the inventory evaluation was paid during the course of the adjustment.  Royal also argues that even if Stoops inaccurately advised plaintiffs about the policy, Stoops did not act with malice or ill will and plaintiffs did not rely upon such information.

Plaintiffs assert that Stoops did not promptly disclose the insurance policy provision which allows $5,000 for inventory appraisal.  Docket 328-7 at 6.   But even if Stoops did not timely disclose this provision, Royal paid the

15

$5,000, which was used to appraise the inventory and, subsequently paid the inventory policy limits of $2 million.  Plaintiffs have failed to set forth evidence of any injury suffered by them due to the failure to disclose this insurance provision.  As such, plaintiffs' bad faith cause of action cannot rest upon the fact that the availability of inventory appraisal money was not initially disclosed when such information was subsequently disclosed, the insurance companies paid the $5,000 to appraise the inventory, and plaintiffs received the $2 million inventory policy limit.  Based upon the above discussion, the court finds that partial summary judgment is granted in relation to this particular allegation.

Additionally, plaintiffs allege that Stoops represented to them that there was a seven-day waiting period deductible on business interruption and extra expenses but that under the insurance policy, there is only a seven-day waiting period deductible on business interruption and extra expenses if the cause of the loss was an "off premises utility interruption."  Miller, plaintiffs' expert, opined that because the cause and origin of the Federal Beef fire was not an "off premises utility interruption," the seven-day waiting period deductible on business interruption and extra expense does not apply to plaintiffs.  Docket 328-7 at 5.  Defendants offer no reason for why they claimed that a seven-day waiting period applied.  There is sufficient evidence

16

from which a jury could find that Royal imposed a seven-day waiting period deductible on the business interruption coverage without a reasonable basis.

The insurance policy carried an endorsement for a ninety-day extension for loss of income/business interruption coverage.  Plaintiffs maintain that this endorsement was not disclosed to them by Stoops.  Miller, plaintiffs' expert, opined that Stoops wrongfully and intentionally utilized an 18-month period as it applied to plaintiffs' loss of income/business interruption in part because he failed to add an additional three months as required by the ninety-day extension provision of the insurance policy. Docket 328-7 at 6.  Defendants offer no reason for why they failed to allot plaintiffs the ninety-day extension for loss of income/business interruption coverage as required by the policy.  This is sufficient evidence from which a jury could find that Royal denied business interruption policy benefits absent a reasonable basis because defendants did not provide plaintiffs with a ninety-day extension that they were entitled to receive.

**B.    Knowledge or Reckless Disregard of the Lack of a Reasonable Basis for Denial of Policy Benefits**

Plaintiffs argue that defendants knew or acted with reckless disregard of the lack of a reasonable basis for denial of policy benefits.  Plaintiffs assert that Stoops initially recommended a reserve of $5.37 million for their business interruption claim, but subsequently only recommended that the

insurance companies pay $700,000.  Further, plaintiffs argue that Stoops was biased against them and that this bias was reflected in reports authored by Stoops that negatively represented them to the insurers.  Plaintiffs also contend that Stoops suggested to equipment lessors that they sue Federal Beef to recover amounts owed on equipment damaged in the fire, which is contrary to standards.  Plaintiffs emphasize that at no time did Royal intervene or address the fact that Stoops was not objectively evaluating the claim.  Royal responds that Stoops was not biased towards plaintiffs.  Royal asserts that the payments made by the insurance companies, at the request of Stoops, were based upon the loss measurements and calculations of independent adjusters and consultants.  Further, Royal asserts that the fact that Stoops told creditors to sue Federal Beef is unrelated to the denial of insurance benefits.

Plaintiffs have provided evidence from which a jury could determine that Stoops was biased towards plaintiffs.  First, Miller, plaintiffs' insurance expert, opined that his review of the documentation indicates a potential bias against plaintiffs on the part of Stoops.  Docket 328-7 at 7.  Additionally, Stoops sent a letter dated August 28, 2002, to one of plaintiffs' creditors, stating that plaintiffs had received millions of dollars and that the creditor's equipment claim against plaintiffs may be included in those millions of dollars.  Stoops advised the creditor that he should file the appropriate legal

18

action to protect his interest.  Docket 328-25.  Miller opined that Stoops's comments suggesting the creditor sue the plaintiffs is "outrageous conduct by a professional adjuster."  Docket 328-7 at 29.  Moreover, Stoops's various reports contain comments from which a reasonable jury could find that Stoops was not acting objectively.  Accordingly, if the jury believes the evidence presented which may demonstrate Stoops's alleged bias, the court finds that such evidence would be sufficient to prove that defendants knew or acted with reckless disregard when they denied policy benefits absent a reasonable basis.

Based upon the above discussion, the court finds that partial summary judgment is appropriate with regards to plaintiffs' allegations relating to the missed rooms and equipment and the $5,000 inventory appraisal.  But the court finds that summary judgment is not proper with regards to the remaining allegations which form the basis for plaintiffs' bad faith cause of action.

**II.     SDCL 58-12-3**

Under SDCL 58-12-3, in all actions or proceedings against an insurance company, "if it appears from the evidence that such company . . . has refused to pay the full amount of such loss, and that such refusal is vexatious or without reasonable cause, . . . the trial court . . . shall, if judgment or an award is rendered for plaintiff, allow the plaintiff a reasonable

19

sum as an attorney's fee to be recovered and collected as a part of the costs."
Before attorney's fees may be awarded under this section, the trial court
must find "that the insurance company refused to pay the full amount of the
insured's loss and that said refusal was either vexatious or without
reasonable cause." Brooks v. Milbank Ins. Co., 605 N.W.2d 173, 178 (S.D.
2000).

The court finds that plaintiffs have presented evidence that illustrates
that they may be entitled to attorney's fees and, therefore, partial summary
judgment is not appropriate at this time. The evidence discussed above in
relation to plaintiffs' bad faith claim provides a potential basis for an award of
attorney's fees to plaintiffs. But the court notes that even if a jury were to
find defendants acted in bad faith, the jury's "finding of bad faith on the part
of a insurance company does not mean 'ipso facto' that its conduct was
vexatious or without reasonable cause." Isaac v. State Farm Mut. Auto. Ins.
Co., 522 N.W.2d 752, 763 (S.D. 1994). Moreover, "[p]ursuant to SDCL 58-
12-3, attorney's fees are allowed only in an action against an insurer based
upon the policy." Sawyer v Farm Bureau Mut. Ins. Co., 619 N.W.2d 644, 652
(S.D. 2000). Thus, plaintiffs' bad faith claim against defendants is "not an
action against an insurance company on a policy of insurance within the
contemplation of SDCL 58-12-3." Isaac, 522 N.W.2d at 763. As result,
plaintiffs could only recover attorney's fees for their breach of contract

20

claims.  The court notes that at this point in the litigation, it cannot make the factual findings required to award attorney's fees and that the issue is best left to be determined after trial.

### III.    Fiduciary Duty

Plaintiffs argue that their fiduciary duty allegation and bad faith allegation should be treated similarly.  As a result, plaintiffs assert that because there is a genuine issue of material fact in relation to the bad faith claim, there is, likewise, a genuine issue of material fact in relation to the breach of fiduciary duty claim.  Royal argues that plaintiffs' claim for breach of fiduciary duty is duplicative of their claim for bad faith.  Royal maintains that because the bad faith allegation and the breach of fiduciary duty allegation rest on nearly identical allegations and will be proven by the same evidence, they are duplicative.

"Two claims are duplicative of one another if they 'arise from the same facts . . . and do not allege distinct damages.' " NetJets Aviation, Inc. v. LHC Comm'ns, 537 F.3d 168, 175 (2d Cir. 2008) (citation omitted).  Here, the elements of bad faith and breach of fiduciary duty are different.  For plaintiffs to prevail on a bad faith claim, they must show (1) an absence of a reasonable basis for denial of policy benefits and (2) knowledge or reckless disregard of the lack of a reasonable basis for denial of policy benefits.  See generally SD Civil PJI 47-102.  To prove a breach of fiduciary duty, plaintiffs

21

must demonstrate that (1) defendants breached their fiduciary duty, which required them to act for the benefit and in the best interest of the plaintiffs in the course of the fiduciary relationship and (2) the breach of the fiduciary duty proximately caused damages.  <u>See generally</u> SD Civil PJI 160-03.  One significant difference between the two causes of action is that bad faith requires knowledge or reckless disregard whereas breach of fiduciary duty does not.  It necessarily follows that the causes of action cannot both arise from the same exact facts.  Further, the damages are different under each cause of action.  Accordingly, the court finds that these two causes of action are not duplicative and, therefore, summary judgment is not appropriate on those grounds.

Based on the foregoing, it is hereby

ORDERED that defendants' motions for partial summary judgment (Docket 283) are granted in part and denied in part.

Dated October 9, 2008.

BY THE COURT:


<u>/s/ *Karen E. Schreier*</u>
KAREN E. SCHREIER
CHIEF JUDGE